UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DR. BRADLY KECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) CAUSE NO: 1:17-cv-3088 | |
| | ) | |
| THE BOARD OF TRUSTEES OF | ) | |
| INDIANA UNIVERSITY a/k/a | ) | |
| INDIANA UNIVERSITY-PURDUE | ) | |
| UNIVERSITY INDIANAPOLIS, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1.     Plaintiff, Dr. Bradly Keck ("Keck"), brings this action against Defendant, The Board of Trustees of Indiana University a/k/a Indiana University-Purdue University Indianapolis ("Defendant"), for unlawfully violating his rights as protected by Title VII of the Civil Rights Act of 1964 ("Title VII").

**PARTIES**

2.     Keck has resided within the Southern District of Indiana at all relevant times.

3.     Defendant is a government entity operating within the Southern District of Indiana.

**JURISDICTION AND VENUE**

4.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. § 1988; and 42 U.S.C. § 2000e-5(f)(3).

5.     Keck was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

6.     Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

7.     Keck satisfied his obligations to exhaust his administrative remedies, having timely

filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  The EEOC issued a "Dismissal and Notice of Rights" to Keck.  He now timely files his lawsuit.

8.    Venue is proper in this Court.

## FACTUAL ALLEGATIONS

9.    Keck has a PhD in Nuclear Chemistry and is certified with the American Board of Health Physics.

10.    Defendant hired Keck for the position of Assistant Director of Health Physics on or about June 15, 2016.

11.    Keck worked in the Department of Radiation Safety.

12.    Keck's work performance met or exceeded Defendant's legitimate expectations at all relevant times.

13.    On or about January 11, 2017, IU Health experienced a highly radioactive nuclear spill due to the actions of two female Med Technicians (one student and one employee), which spill resulted in the significant contamination of the lab and the Med Technicians and posted substantial danger to the health and safety of IU Health's employees.

14.    The Med Technicians and their supervisor did not promptly follow proper training and policies in responding to the spill and contamination, thereby increasing the substantial nature of the danger caused by the spill.

15.    As part of and within the scope of his duties and responsibilities, Keck and another coworker reported to and addressed the spill and contamination.  His coworker closed and cleaned the lab of contamination.  Keck addressed the contamination of the Med Technicians.

16.    Keck ran the survey meter over the Med Technicians and discovered that they were

-2-

significantly contaminated with radioactive isotopes.

17.    Consistent with training, procedures, and protocol on nuclear medicine and remedying contamination resulting from radioactive spills, Keck ordered the Med Technicians to proceed to the women's locker room, to remove their clothes, and to shower individually.

18.    Failure to remove the radioactive contamination could have resulted in significant harm to the women, including death, erythema, desquamation, and long-term development of cancer. They each had to shower between two and four times.

19.    After each shower, Keck ran the survey meter over the contaminated areas of the skin to determine if contamination remained, which it did. He then requested that they again proceed into the shower where he washed their calves to remove the remaining contamination. Finally, the radioactive contamination had been significantly reduced to acceptable levels. He provided clean scrubs to them which he had ordered. Both women thanked Keck.

20.    Multiple management employees acknowledged that Keck had properly performed his duties in an emergency situation.

21.    Mack Richard, Keck's supervisor, told him: "I don't know if I would have done exactly what you did, but if I didn't, there would have been a higher skin dose."

22.    Mike Jensen, Vice President of Environment Health and Safety, represented: "Thank you for taking care of our people. If it comes to it, we'll [IUPUI] provide you with a university lawyer."

23.    Rebecca Spratt, Director of Environment Health and Safety, told him: "That's emergency response – you trade a little nudity for safety."

24.    Defendant subsequently suspended Keck pending investigation.

25.     Defendant told Keck that he would be able to provide his full account of the events during an interview before any material decisions were made.

26.     On or about January 25, 2017, Keck, through his attorney, served a draft Charge of Discrimination on Defendant alleging sex discrimination.

27.     On or about January 30, 2017, Keck submitted his resignation.

28.     On or about January 31, 2017, Defendant rejected his resignation and fired him.

29.     Defendant took adverse employment actions against Keck because of his engagement in statutorily-protected activities.

30.     Any reason proffered by Defendant for the adverse actions it has taken against Keck is pretextual.

31.     Keck has suffered injury as a result of Defendant's unlawful actions.

## RETALIATION – TITLE VII

32.     Keck hereby incorporates paragraphs 1-31 of his Complaint.

33.     Keck engaged in statutorily-protected conduct before his discharge.

34.     Defendant took adverse employment actions against Keck in retaliation for his engagement in statutorily-protected conduct.

35.     Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Keck's rights as protected by Title VII.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Dr. Bradly Keck, by counsel, respectfully requests that this Court find for him and order that:

1.     Defendant reinstate Keck to the same position, salary, and seniority, or pay front pay

and benefits to him in lieu of reinstatement;

2.      Defendant pay lost wages and benefits to Keck;

3.      Defendant pay compensatory damages to Keck;

4.      Defendant pay pre- and post-judgment interest to Keck;

5.      Defendant pay Keck's attorneys' fees and costs incurred in litigating this action; and

6.      Defendant pay to Keck any and all other legal and/or equitable damages that this

Court determines appropriate and just to grant.

Respectfully submitted,


*s/ John H. Haskin*
John H. Haskin, Attorney No. 7576-49

*s/ Bradley L. Wilson*
Bradley L. Wilson, Attorney No. 21154-49

*s/ Shannon L. Melton*
Shannon L. Melton, Attorney No. 29380-49


Attorneys for Plaintiff
Dr. Bradly Keck


JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana  46204
Telephone:      (317)955-9500
Facsimile:      (317)955-2570
Email:      jhaskin@jhaskinlaw.com
            bwilson@jhaskinlaw.com
            smelton@jhaskinlaw.com

## DEMAND FOR JURY TRIAL

Plaintiff, Dr. Bradly Keck, by counsel, respectfully requests a jury trial for all issues deemed triable.

Respectfully submitted,


*s/ John H. Haskin*
John H. Haskin, Attorney No. 7576-49